We'll move on to the next case, Alke v. New York State Department of Correction. Good afternoon, Your Honors. This is Bernard Kleinman. I represent the appellant, Mr. Alke. I want to focus initially, at least, on just some of the very necessary underlying facts which show that Mr. Alke, when he was an inmate at the Clinton Correctional Facility, was seriously injured when he was moving a desk. A desk, about a 400-pound desk, fell on him. Then went, as the record shows, he went to medical, and eventually he saw Dr. Adams, who was the physician at CCF, at Clinton Correctional. In the, in his complaint, in the appellant's complaint, he makes it clear over and over that Dr. Alke repeatedly either ignored his request for relief or simply told him that he didn't really care about them at all. I mean, in the, whether, Dr. Adams denies this, obviously, in his own depositions, in the complaint of Mr. Alke. But don't the medical records show that Dr. Adams treated him extensively over the course of two years, more than two years? Well, the records show that he did see him a number of times, but the question, of course, is what that treatment consisted of. And the problem is- He got, he got x-rays, he got MRIs, he had an ENG nerve conduction study, he was prescribed therapy, medication, the medication was adjusted. That's absolutely true, Joseph, that he did get, he got PT, and he also was prescribed over and over. But Mr. Alke himself had repeatedly requested that he at least have the opportunity to see an expert. And when someone suffers a serious back injury, being able to see an orthopedist or a neurologist or a physiatrist is usually an essential part of the treatment, especially when the x-rays themselves show that he had suffered a fracture of the L12 and also- You have to show deliberate indifference. You can't, you know, just show medical malpractice or disagreement on treatment. So what is the evidence here of deliberate indifference? The evidence here, Your Honor, of deliberate indifference is that medical records do show, without any question, that Mr. Alke suffered a severe, suffered a fracture of his vertebrae after the accident. The deliberate indifference is, by definition, failing to refer having Dr. Adams, who really was not qualified to treat someone in this position, notwithstanding the state's contention otherwise, to have him treated by the appropriate physician. Sending him off to get the x-rays and having an MRI, all that did was confirm what, that the pain originated from a serious injury. But once you have that information, you need to do more than just tell your patient to go for PT and have a number of prescribed pain meds. The result- Your argument is that the tests revealed a condition that they then were deliberately indifferent to. Was that a fair characterization? Absolutely. I mean, it started out, Your Honor, where he ends up going to see Dr. Adams, and if you accept Mr. Alke's contention, Dr. Adams told him, as Mr. Alke said in his deposition, Dr. Adams told him to get the F out of my office. And then when my client said that he really couldn't believe he was being treated that way, that he would get a lawyer, Dr. Adams said, I really could care less. And this really shouldn't be that much of a surprise during the is the fact that Dr. Adams, when he had that information in front of him, and this also applies to Dr. Johnson, who I believe also the dismissal of Dr. Johnson also should be reversed. And those are the two key individuals, I believe, who share responsibility. I mean, I guess if he were to adopt- I'm sorry. I'm sorry, Judge. Could you speak to Dr. Johnson as well as Mr. Fisher and Mr. Rossett? Our standard is that they had to have personally been involved or directly contributed to any of Mr. Alke's medical treatment or mistreatment, I guess. And it was not clear to me what exactly you were focusing on with regard to Dr. Johnson or the other two individuals. Could you clarify that, please? Sure, Judge Carney. The answer there is that I recognize that the liability on Rossett and Fisher is really, it's far too much of a reach, and the plaintiff really can't get there. But Dr. Johnson is completely different set of circumstances. Mr. Alke made the record shows that in August of 2014, I believe it was, he actually sent a detailed letter to Dr. Johnson, detailing his pain and the treatment he received from Dr. Adams. And this letter, this is not a matter of now Dr. Johnson being responsible for Dr. Adams' work on a respondeat superior claim, which is not going to stand. But this is where Dr. Johnson is being put on specific notice by an inmate as to specific conditions and facts that he underwent. And Dr. Johnson just completely ignoring this and referring it back to Dr. Adams to look into it, there is no purpose whatsoever. I mean, she had a responsibility as the chief medical officer to do more than just kick it back to Dr. Adams. And especially when my client had specifically complained that Dr. Adams wasn't doing his job. This all would have been rectified, quite honestly, if there had been follow-up care by an orthopedist or someone who was actually trained in treating back injuries, which is a specialization, there's no question about that. But the state, obviously, for whatever reason, more likely to save money, rather than retaining an outside medical personnel, decides to just treat this inmate with painkillers and PT. So getting as far as Reset and Fisher, as I said, I don't believe that there really is liability that can be placed on their shoulders, because there are too many steps to take. But I think Dr. Johnson, that letter, which I believe my adversary claims should not be considered by the court, which in fact, it should be considered because that letter is referenced in, I believe it's paragraph 69, I think. November 13, 2014, he wrote the letter. Yes, absolutely, Judge. I was going to say that. In paragraph 69, that is the specific letter. And under, I mean, I know my adversary cites a case that says that documents submitted in a 12D motion shouldn't be considered. But the court looks, for example, at DeFalco against MSNBC, which is 622 F3rd 104. This court said that where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint. Here, my client, specifically in the response on the 12D motion, it was referenced, this letter was added, and the letter was specifically referenced in the complaint. It shouldn't have been difficult for the state to find this letter at all. The failure to include it in the complaint as an exhibit, I don't think, precludes its consideration by the court. Can I just ask, where do you stand with regard to your claims against Nurse Taylor? Have those been abandoned on appeal? I don't believe that Nurse Taylor is sufficiently, really should stand as any liability here either. I think the responsibility lies primarily on Dr. Adams' shoulders and Dr. Johnson's shoulders. And as I said, I think that if it had been a matter that Dr. Johnson had not been notified by my client and was completely unawares of the condition that he had suffered and the injuries, then clearly she would not be responsible. But by sending this letter to her and her directing Dr. Adams to take some action, she becomes directly responsible. And I don't think she can shirk the responsibility. And unless the judges- Can I ask one more question before you sit down? So for your ADA and Rehabilitation Act claims, do you have plausible allegations that Mr. Elkey was discriminated against because of his injury? I don't believe that. Honestly, after reading Judge Hurd's ruling, I believe that those claims were in fact properly discussed by the court. I think that the only claims that should survive, Your Honor, and my client should have the opportunity in front of a fact finder to establish them, is that this goes beyond malpractice. This isn't simply a doctor giving the wrong advice. This is a doctor being confronted with medical records and having the opportunity to do the right thing and to do no harm and choosing to do the easy thing, which is sending him off to PT in the facility and prescribing pain medication. All right. Thank you. Any other questions? If not, we'll hear from the other side. Thank you, Judge Chin. You're welcome. May it please the court, the record here shows that Dr. Adams did not deliberately disregard plaintiff's back injury and therefore is not liable. And therefore, that summary judgment was properly granted dismissing plaintiff's Eighth Amendment claims against Dr. Adams and the derivative claims against the other individuals. Plaintiff here focuses on Dr. Johnson. Judge Chin, as you reviewed with my friend at the outset of his argument, there was a litany of treatment here, many forms of treatment that were provided to the plaintiff. A physical exam was conducted, x-rays of the thoracic and lumbar spine. But why isn't it? I mean, it's obviously true. And the record shows that Dr. Adams saw Mr. Alki on many occasions. But an injury, a back injury of this gravity and nature seems to demand treatment or evaluation, at least by either a poor treatment can be so severe as they turned out to be here. But why isn't it the case that it amounts to deliberate indifference by failure to make a referral to someone with expertise in this very risky kind of grave injury? Well, a couple responses, Judge Kearney. Number one, in terms of, I think you mentioned nerve specialties and things like that. In July 2014, Dr. Adams did order an EMG test and a nerve conduction test and use the results of those tests to further inform the remainder of plaintiff's treatment regimen from that time. Let me just ask, is Dr. Taylor a neurosurgeon or a neurologist or a specialist in this kind of orthopedic slash neuro injury? Dr. Adams, Your Honor? Yes. Oh, I don't believe he's a specialist in those. But that brings me to my second point, which is, I certainly understand sitting here, your intuition that a referral could have been appropriate. But not only do we not have deliberate indifference here, we don't even have medical malpractice. There is no opposing testimony, no affidavit, no documents from any other medical professional saying that what Dr. Adams did was wrong. So all we have are plaintiff's own allegations that he would have liked to see a specialist. I'm sure he would have, but there's nothing in this record, in this summary judgment record that would allow a jury to determine even that another medical professional disagreed, much less that that disagreement was so great that it amounted to that Dr. Adams's failure to to refer a plaintiff to an outside specialist amounted to deliberate indifference. So this record may not support it, you're saying, but you don't disagree that in some circumstances, the failure to refer to someone specialized in the particular problem where the risks are very grave might constitute deliberate indifference? Oh, absolutely, Your Honor. Yes, right. That's right. We're not arguing for any sort of blanket rule that a failure to refer can never support an Eighth Amendment claim. We think as this court has traditionally approached these cases, each case has to be decided on its own facts and on its own summary judgment record. And that's what we're asking you to do here. But you're right. Thank you, Your Honor. I'm glad I got to clarify that position. We are not seeking any sort of across the board rule there. You know, to the to the regimen that plaintiff was given here, part of that did include painkillers. And that's certainly some of the focus of what plaintiff discussed here today and in his brief. But I do want to note that Dr. Adams's prescription of Percocet was far from arbitrary here. Percocet was prescribed to plaintiff beginning in July 2014, only after they tried a year's worth, approximately I think 10 or 11 months worth of other medications and was unable to achieve consistent outcomes. There's in the record Robaxin was tried, a muscle relaxer, Flexeril, then Elevil, then Neurontin. And then once the Percocet regime was in place, it was discontinued at plaintiff's request when plaintiff asked that it be discontinued in in January 2015. So this is not what I think the other side might be suggesting, a sort of dictatorial my way or the highway medical treatment regime. This is, while perhaps not the only reasonable course of treatment, this is a regime of treatment that was responsive to the patient, the plaintiff's concerns. And that was, as Judge Chin highlighted with my friend on the other side, periodically adjusted over time when the needs, when the facts and circumstances suggested it. So unless there are any further questions... Let me just follow up. Your friend pointed us to his claims against Dr. Johnson and the failure to respond substantively to the letter that was detailed in that his client sent, and just sending it back to Dr. Adams, basically. Does that amount to enough of a direct contribution or personal involvement to raise a question of fact, potentially about her liability for inattention here? Our view is that it doesn't. You know, I think reasonable minds might be able to disagree, as to whether that should have survived the pleading stage. And, you know, just talking about the allegations in the complaint, as my friend did. But now we're at the summary judgment stage. And we think that... No, no, no. But on Johnson, Johnson was at the 12B6 stage. Wasn't that correct? Isn't that correct? Oh, yes, that's right. But what I'm trying to say is that our view of the case, my client's view of the case, is that because there was no... At the summary judgment stage, there was no Eighth Amendment. No Eighth Amendment claim could be sustained against Dr. Adams, the treating physician himself. Our view, as we've always argued this case, is that Johnson's liability is essentially, maybe not... Derivative might be too formal a word, but it's tied to Dr. Adams' alleged liability. So because there was no underlying deliberate indifference by Dr. Adams, our argument is that even if the claims against Dr. Johnson were to have survived the summary judgment, no reasonable jury could find in plaintiff's favor, because no reasonable jury could find any underlying deliberate indifference by Dr. Adams. Well, I think the only problem with that argument is that Dr. Johnson is out of the case. And so who knows if Dr. Johnson were still in the case, whether the plaintiff could have come up with some evidence as to Dr. Johnson. But in any event, if we just look at what's in the complaint on the 12B6 motion, the allegation was essentially based solely on the failure to respond to a letter? That's right, which is... And so why isn't that enough in your view? Well, there is case law, the name escapes me at the moment, but there's certainly case law from the circuit saying that, I believe it's a doc's commissioner's failure to respond, or it might even be a doc's superintendent's failure to respond to a letter, does not in itself constitute personal involvement in whatever the underlying issue. In fact, that might've been the Cologne case itself, the seminal case from 1995, does not constitute sufficient personal involvement as to whatever the underlying subject matter of that letter is. And we think that... But you also allege that Dr. Johnson directed Adams how to respond to a letter. It says, Johnson was his referring physician for various procedures. I mean, is that not more than just answering a letter? Well, to the extent that's more than just answering the letter, and I think, again, in the Cologne case that I referenced, there was a refer... The commissioner did refer the letter to one of his subordinates, even though he didn't respond personally. So I think that those facts still line up, but to the extent it was referred back to Dr. Adams, then we would say, again, that regardless of what happened at the motion to dismiss stage, a fortiori, because there was no underlying deliberate indifference on the part of Dr. Adams, then there can be none on the part of Dr. Johnson for essentially referring it to Dr. Adams to then prescribe the regime of treatment that he prescribed. All right. Well, thank you both very much. The court will reserve decision. Thank you very much, Your Honor.